## BACH et al. v. UNITED STATES.

Circuit Court of Appeals, Third Circuit.
March 5, 1929.

Nos. 3904–3907.

David S. Malis and Joseph H. Lieberman, both of Philadelphia, Pa., for appellants.

Franklin J. Graham, of Philadelphia, Pa., for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. These four defendants were tried and convicted under one count of an indictment which charged them with manufacturing intoxicating liquor in violation of the National Prohibition Act (27 USCA). After sentence they appealed.

There is no question that liquor was unlawfully manufactured. Whether there was evidence that two of the defendants partici-pated in its manufacture and whether the other two, admittedly participating, did so unlawfully are the main questions on this appeal. These questions are out of the ordinary because they arise out of a bold and wholly novel method of violating the law. Some one, not revealed, conceived the idea that if liquor were manufactured in an open and above board manner without the slightest appearance of secrecy it would disarm suspicion and permit violation of the law without detection.

A four-story building, formerly used as a soap factory, located on a public street in the heart of the manufacturing district in the city of Lancaster, Pennsylvania, was leased to persons holding themselves out as the Miller Syrup Company. Later, it was at considerable cost converted into a complete distilling plant, beginning on the top floor with mash vats of 100,000 gallons capacity and descending with proper machinery to the ground floor, capable of turning out 2,500 gallons of alcohol per day. After the plant had been in operation for about three weeks without a permit, prohibition agents entered and arrested these four defendants with others as persons engaged in the unlawful manufacture of alcohol in different capacities; Sigal and Love in capacities that are still uncertain and Signoreilli and Bach as workmen. Thus grouped, the defendants were tried not for conspiring to violate the National Prohibition Act but for separately committing a substantive offense defined by the Act on evidence that divided and differed as it affected the two groups.

Sigal and Love when arrested were seated in the office of the plant dressed in street clothes and doing nothing. They represented to the agents and testified at the trial that they went to the office for the purpose of telephoning and had no connection with the plant. Whether or not that was true, the jury did not believe them but believed the testimony for the government which they now challenge as not sufficient to sustain their conviction. Aside from their misfortune in having their stories as to their occupations, past and present, contradicted, there was testimony (very close to hearsay but no objection made) to the effect that they had on several occasions been seen working in different parts of the plant and testimony (not hearsay) that they admitted they had worked in the plant but only as employees of one Humphreyville, a plumber.

These statements Humphreyville denied and to his denial Sigal and Love made no reply. The court properly instructed the jury that the charge in the indictment that these

men were manufacturing liquor did not necessarily mean that they were making it with their hands. Alcohol was not manufactured at this plant by hand; it was manufactured by machinery elaborately organized and any one working with the machinery, directing its operation, superintending the operatives or attending to the business end of the adventure was engaged in the manufacture of alcohol equally with those manually engaged in turning out the product.

We find the testimony as it affected Sigal and Love was such as to require submission to the jury and was enough to sustain its verdict. Therefore the trial court did not err in denying the motion of these defendants for a directed verdict of acquittal. Nor did the court err in its charge when referring to one Harry Katz—possibly but not certainly the manager of the plant—it directed the jury to disregard him in its deliberations, or in failing to recite and emphasize the evidence favorable to Sigal and Love.

As to Signoreilli and Bach there was testimony that they, too, were seen working in the plant and that they admitted being there employed in the manufacture of alcohol. There is no evidence that they were making syrup. Of the several errors they assign, the one of which they most seriously complain did not arise on failure of necessary proof by the government but on a defense which they had interposed, and its gravamen is not lack of proof of employment as in the case of Sigal and Love but an erroneous and prejudicial instruction which the court made in its charge to the effect that the scienter is not a necessary element in proving the statutory crime for which they were being tried. This assignment is really limited to Bach for, according to the record, there was nothing which Signoreilli, Sigal or Love saw or were told which indicates that they were deceived in the character of the plant or did not know precisely what they were doing when they were manufacturing alcohol. As to Bach's knowledge of of the unlawful operation, he testified that: "When I went to live over there, and I am acquainted with a few fellows out in Lancaster and they told me—they says: 'What is it you are making there?' I said: 'Syrup,' and they told me: 'Is that right?' And I went back to Harry (Katz) and I asked Harry: 'What is this?' He said: 'This is a legitimate business and don't worry. You work here and don't be afraid of nothing. When we get ready to ship the stuff, you are going on the truck.' "

We are not prepared to say that the scienter is never an element in an indictment and proof of a crime under the National Prohibi-

tion Law, or that in every case and under all circumstances an employee's lack of knowledge of the character of an operation, then in fact and later proved to be unlawful, is a valid defense. It is, for the present purpose of passing upon the assignment, sufficient—without attempting to state a rule in the abstract applicable to all cases alike—to apply the court's instruction to the concrete facts of this case. It will not do for one, seeking to avoid responsibility for prohibited conduct, merely to display ignorance or present a blank mind. He must show something more than stupidity, that is, something which in the circumstances would justify his behavior and is substantial enough to submit to the jury. The circumstances in this case were manifestly such as to rob Bach's inquiry of Katz and Katz' words to Bach of justification or protection for what Bach was doing.

The judgments are affirmed.